Frank M. ROSSETTO, Jerry Skidmore and John S. Borowsky, et al., Plaintiffs–Appellees,

v.

PABST BREWING COMPANY, INCORPORATED, Defendant–Appellant.

No. 97–1588.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1997.

Decided Oct. 17, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 14, 1998.

Matthew R. Robbins (argued), Frederick C. Miner, Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Plaintiffs–Appellees.

Thomas M. Knepper (argued), Jill J. Gladney, Neal, Gerber & Eisenberg, Chicago, IL, for Defendant–Appellant.

Before BAUER, EASTERBROOK and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Pabst Brewing Co., Inc. and District 10 of the International Association of Machinists and Aerospace Workers AFL–CIO ("District 10") are parties to a long line of collective bargaining agreements. The most recent collective bargaining agreement ("the CBA"), which is the subject of this appeal, covered the period from June 1, 1993 to June 1, 1995. Article VII of the CBA provided death benefits for retired employees and health benefits for retired employees and their dependents.

During negotiations in June 1995 for a successor agreement to the CBA, Pabst proposed the elimination of retiree benefits from Article VII. District 10 rejected the proposal. A little over a year later, Pabst announced that retiree medical, dental, prescription and death benefits would terminate as of September 1, 1996. Pabst advised retired employees of the impending termination by letter

dated August 1, 1996; Pabst did not notify District 10. District 10 was not aware of Pabst's termination of retiree benefits until the Director of District 10 was so informed by a retiree who received a copy of the letter.

On August 12, 1996, District 10 filed a grievance alleging that Pabst breached the CBA by unilaterally eliminating retiree benefits. On September 19, 1996, Plaintiffs [1] filed an action in the district court seeking reinstatement of the terminated retiree benefits. Count I of the complaint alleged that Pabst breached the CBA in violation of § 301 of the Labor Management Relations Act (LMRA), and Count II alleged that Pabst's refusal to pay retiree health and life benefits constituted a violation of § 502 of the Employee Retirement Income Security Act (ERISA).

By agreements dated November 1 and December 6, 1996, Pabst reinstated the disputed benefits. The parties also extended all of the terms of the expired CBA until January 31, 1997. On January 30, 1997, District 10 served Pabst with a notice of appeal to arbitration of its August 1996 grievance. The arbitration provision in the CBA provides for appeal to arbitration of "all grievances or misunderstandings between the Company and its employees" (Art. XI, § 1) that "cannot be satisfactorily settled" by the grievance process outlined in section 1 (Art. XI § 2). Pabst refused to arbitrate.

On February 13, 1997, Plaintiffs filed an amended complaint that realleged Counts I and II and added Count III, which sought an order compelling arbitration of District 10's grievance and a status quo injunction pending resolution of the grievance. Pabst moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted. Evidentiary hearings were held March 4–6, 1997 before a magistrate judge, sitting by consent of the parties. On March 6, 1997, the magistrate judge granted Plaintiffs' motion to compel arbitration and enjoined Pabst from terminating retiree benefits subject to a final ruling by an arbitrator.

Pabst filed an appeal to this Court on March 12, 1997. Pabst argues that the district court erred in granting Plaintiffs' motion to compel arbitration because (1) the court erroneously applied a presumption of arbitrability, (2) the court's interpretation of Article XI of the CBA was flawed, and (3) the court erroneously failed to consider certain evidence proffered by Pabst regarding Article XI. Pabst also challenges the court's issuance of an injunction. Despite their extensive briefing of these issues, neither Pabst nor District 10 has addressed a critical threshold question—whether District 10 has standing to pursue the retirees' grievance to arbitration. We find that the resolution of this issue precludes our subject-matter jurisdiction over the merits of this appeal.

■ The standing issue was raised by the panel at oral argument. In response to the panel's probing, District 10 insisted that it has standing to pursue the retirees' grievance to arbitration because "it's the Union's contract and the Union's right to arbitrate." In other words, District 10 was a party to the CBA—it negotiated the retiree benefits in Article VII and the grievance/arbitration procedure in Article XI—and, therefore, it is entitled to enforce the CBA's terms. As a general principle, a union has standing under Article III of the Constitution to arbitrate the meaning of a collective bargaining agreement that grants rights to third parties (in this case, retirees) simply by virtue of the fact that the union is a party to the contract. But this does not end our inquiry.

Article XI of the CBA provides for arbitration of "grievances" that cannot be settled through the grievance process. When Pabst and District 10 arbitrate a grievance, District 10 serves as the grievants' representative. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 225, 103 S.Ct. 588, 596, 74 L.Ed.2d 402 (1983). The grievants in this case, however, are retirees, and therein lies the problem.

■ A union's power to negotiate with management derives from the fact that the union is the exclusive bargaining representative of a group of people. Labor jurispru-

---

1. On March 4, 1997, the district court certified a class consisting of forty-one retired Pabst employees, who were represented by District 10 during the terms of their employment, and their spouses and dependents. District 10 and four retired Pabst employees, Frank M. Rossetto, Jerry Skidmore, John S. Borowsky and Generoso Simons, are the representatives of the class.

dence is clear that retirees cannot be part of this group or "bargaining unit." In *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, the Supreme Court held that retirees are not "employees" within the meaning of the collective bargaining obligations of the NLRA and cannot be "employees" included in a bargaining unit. 404 U.S. 157, 172, 92 S.Ct. 383, 394, 30 L.Ed.2d 341 (1971). This is so even in a case where an employer modifies benefits that were originally established through collective bargaining. *Id.* at 183–88, 92 S.Ct. at 399–402.[2] Because District 10 is not the exclusive bargaining representative of the forty-one retirees that make up the class, any claims for benefits here belong to the retirees individually, and the retirees may deal directly with Pabst in pursuing such claims. *See Meza v. General Battery Corp.*, 908 F.2d 1262, 1270 (5th Cir.1990) ("[A]n ex-employee/ex-union member is free to pursue his own claims and make his own settlements with the former employers."); *Local 134, UAW v. Yard–Man*, 716 F.2d 1476, 1484–85 (6th Cir. 1983) ("Unlike the active employees, retirees face no restrictions whatever in seeking fulfillment of contractual benefits directly from their former employer."), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

■ This is not to say that a union can never take retirees' claims to arbitration. Although a union has no duty to represent retirees, and retirees need not submit to union representation, retirees are free to make a union their agent if they so choose. And, of course, retiree benefits are a permissive subject of bargaining—a union may bargain for retirees if the employer agrees. *Pittsburgh Plate Glass*, 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20; *see also Merk v. Jewel Cos.*, 848 F.2d 761, 766 (7th Cir.) ("[U]nions may bargain on behalf of retirees if the employer is willing, although the retirees need not accept the offer of representation. Former employees might choose the union as their agent for purposes of implementing or compromising claims arising under a collective bargaining agreement.") (citations omitted), *cert. denied*, 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988). What we *are* saying is that any right District 10 has to pursue arbitration of the retirees' grievance must come from the retirees. And, of course, Pabst must agree to deal with District 10 in this context.

We are mindful that the retirees in this case have statutory claims under ERISA. At oral argument, District 10 asserted that the retirees could litigate their statutory claims if they so chose and that the litigation and the arbitration would proceed on parallel paths. We do not see how this is possible. One cannot litigate a subject covered by a collective bargaining agreement's arbitration clause unless the union breaches its duty of fair representation in pursuing the grievance. The implication of allowing District 10 to take the retirees' grievance to arbitration is that none of the forty-one retirees making up the class can pursue separate litigation of their statutory claims. If District 10 loses in arbitration, the retirees lose, period.

In *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 294, 139 L.Ed.2d 227 (1997)

---

2. Placing retirees outside of the bargaining unit acknowledges the potential for conflict between the interests of retirees and the interests of active employees. *See United Mine Workers of Am. Health & Retirement Funds v. Robinson*, 455 U.S. 562, 574–75, 102 S.Ct. 1226, 1233, 71 L.Ed.2d 419 (1982) ("[F]ormer members and their families may suffer from discrimination in collective-bargaining agreements because the union need not 'affirmatively ... represent [them] or ... take into account their interests in making bona fide economic decisions in behalf of those whom it does represent.'") (quoting *Pittsburgh Plate Glass*, 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20); *Pittsburgh Plate Glass*, 404 U.S. at 173, 92 S.Ct. at 394 ("Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment."); *Anderson v. Alpha Portland Indus.*, 752 F.2d 1293, 1297 (8th Cir.) (en banc) ("[A] union's interest in retirement benefits ... [is] 'speculative' because present employees would have no assurances that they were advancing their own interests by advancing pensioners' interests."), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985); *Local 134, UAW v. Yard–Man*, 716 F.2d 1476, 1484 (6th Cir.1983) ("While the union may have bargained for and received benefits for retirees, it does not have the same interest in the enforcement of those contractual rights on the behalf of individual retirees that it has in the terms and conditions of employment of active employees."), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

(No. 96–1830), a case involving current employees rather than retirees, this Court held that it was impermissible for a collective bargaining agreement to have a clause providing for arbitration of all claims under Title VII of the Civil Rights Act of 1964. Although the employees could individually agree to arbitrate their statutory claims, the union could not agree on the employees' behalf. The panel explained:

> We are not holding that workers' statutory rights are never arbitrable. They are arbitrable if the worker consents to have them arbitrated. If the worker brings suit, the employer suggests that their dispute be arbitrated, the worker agrees, and the collective bargaining agreement does not preclude such side agreements, there is nothing to prevent a binding arbitration. All we are holding is that the union cannot consent *for* the employee by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement.

*Id.* at 363 (citations omitted).

*Pryner's* reasoning is applicable here. The retirees have statutory rights outside the scope of District 10's representative capacity. The retirees are entitled to litigate their ERISA claims, which, contrary to what District 10 asserted at oral argument, are not free-standing—for practical purposes, arbitration would dispose of all of the retirees' claims. District 10 cannot hijack the retirees' right to pursue their statutory claims by forcing arbitration.

We reiterate that we are not holding that a union can never represent retirees in arbitration. District 10, it would seem, does have a legitimate interest in the outcome of any settlement between Pabst and the retirees. *See Yard–Man*, 716 F.2d at 1486 (noting that a union has an interest in ensuring an employer's compliance with all of the terms of a collective bargaining agreement; that a union's efforts in this regard are a significant consideration for active employees when choosing to retain the union as their exclusive bargaining representative). Indeed, other courts have held that a union has standing to represent retirees in grievance and arbitration proceedings. *See, e.g., Local 589, Int'l Ladies' Garment Workers' Union v.*

*Kellwood Co.*, 592 F.2d 1008 (8th Cir.1979); *United Steelworkers of Am. v. Canron, Inc.*, 580 F.2d 77 (3d Cir.1978). However, as the Eighth Circuit recognized, "[t]hese cases do not establish that a union which ... bargain[s] for its retirees becomes their *exclusive* representative and that the retirees then *must* proceed through the union." *Anderson v. Alpha Portland Indus.*, 752 F.2d 1293, 1296 (8th Cir.) (en banc), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985).

█ In short, District 10 does not have any right to represent the retirees making up the class in this case unless each of the retirees assents to its representation. This record contains no evidence in this regard. Just because District 10 purports to represent the retirees does not mean that the retirees have assented to its representation. Moreover, even if we were to find consent by the retirees, there is no evidence that Pabst has agreed to bargain with District 10.

In conclusion, District 10 lacks standing to bring the retirees' grievance to arbitration. The judgment of the district court is VACATED, and this appeal is DISMISSED for lack of jurisdiction.