Rita ROTH, Delores Adair, Gary Budzinski, John Che-
lig, June LoCoco, George Farkus, Daryl R. Grober,
Vera Gross, Andrew Huppert, Donald L. Jackson,
Ronald Jackson, Harry Kalupa, DuWayne Kasal,
Nona Koellner, Al Ohrmund, Edward Paul, Cliff Peak,
Allen Reininger, Mildred Sievers, Fred Skerpea, Elain
Stechauner, Tony Stechauner, Caroline Stelzel,
Morene Tomasello, Robert Yourich and John Verhulst,
Plaintiffs-Appellants,†

v.

. CITY OF GLENDALE, Defendant-Respondent.

Court of Appeals

*No. 97–3467. Submitted on briefs December 1, 1998.—Decided
February 23, 1999.*

(Also reported in 593 N.W.2d 62.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Alvin R. Ugent* of *Podell, Ugent, Haney & Delery, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Maria K. Myers* of *Davis & Kuelthau, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

CURLEY, J.   Appellants, retired employees of the City of Glendale (retirees), appeal from an order granting summary judgment to the respondent, the City of Glendale (City). The retirees, in this suit claiming that the City violated their contractual rights, argue that the order was improper because the health care provisions found in the collective bargaining agreements (CBAs) in effect at the time of their respective retirements were "clear and unambiguous and should be enforced" in their favor. We conclude that because: the health care provisions found in the CBAs were in effect only for the duration of each contract; the CBAs were silent as to vesting of the health care provisions; and the retirees cannot point to any provisions that indicate an intention to grant lifetime health care benefits to retirees, the trial court properly granted summary judgment in favor of the City.

## I. BACKGROUND.

All but four of the retirees involved in this litigation were members of a bargaining unit represented by AFSCME, AFL-CIO.[1] The retirees were covered by a series of CBAs spanning the years 1972–1997. The provisions at issue are those requiring the City to pay a significant portion of the retirees' health insurance benefits. From 1972 to 1992, the wording of the CBAs remained substantially unchanged with regard to the payment of health care benefits:[2]

---

[1] There is no dispute that the non-represented employees were treated the same and provided the same benefits as the retirees.

[2] From 1972–74 the clause varied slightly from the other years. It read:

> Any employee who retires from the City, shall be eligible for Blue Cross-Blue Shield Medicare Extended - 365 days, when such retiree attains age sixty-five (65), with the City paying the entire premium for single or family coverage where applicable.

Over the years, there were several minor provision changes, including changes in the health insurance carrier and changes in the cost paid by retirees. However, in 1979, a major change was added, which remained until 1989, which provided that the employee contribution of the health insurance premium would remain a negotiable item upon the expiration of that particular agreement. From 1972 to 1989, the CBAs provision dealing with health insurance stated that in order for a retiree to be eligible for benefits, the retiree must have had ten years of service with the City. In 1989, the CBA provision defining who was eligible for health insurance coverage as a retiree was modified to require fifteen years of service. As noted, through 1992, the various CBAs required the City to pay the entire premium for health care benefits for retirees. In 1992, that provision was re-negotiated to read:

> Upon retirement, the City agrees to pay up to 105% of the lowest cost health insurance plan available in the City's service area (Milwaukee County) under the State Health Plan for family or single coverage, whichever is applicable until the employee reaches age 65. The retired employee shall pay the difference, if any, between the actual cost of the

---

Any employee who retires at age sixty-five (65) shall be covered under Blue Cross-Blue Shield Medicare Extended - 365 days, with the City paying the entire premium for single or family coverage where applicable.

insurance coverage and the amount paid by the City.

The union negotiated this change with the City on the employees' behalf. Although none of the retirees was a party to these negotiations changing the formula for health care coverage, each was notified of the change by letter.

After this change was enacted, the retirees brought suit against the City, claiming they had a vested interest in the retirement benefits that were established under the various CBAs in operation when they each retired and that the above change was being improperly applied to them. The retirees moved for summary judgment. The trial court granted summary judgment to the City, relying on the rule of law found in *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806 (7th Cir. 1992), which states that retirees have no vested right to benefits beyond the expiration of the benefit agreement where the agreement does not specifically provide otherwise.

## II. ANALYSIS.

Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. Our review of a trial court's grant or denial of summary judgment is *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816, 820 (1987). We use the same summary judgment methodology as the trial court. *Id.* That methodology has been described in many cases, *see e.g., Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980), and need not be repeated here. Summary judgment must be granted if the evidentiary material demonstrates "that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RULE 802.08(2), STATS.

## A. Right to negotiate for retirees.

The retirees first contend that because retirees are not part of the current bargaining unit, and the labor union does not represent retired persons, *see Rosetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997), the trial court erred in its finding that the City of Glendale could lawfully negotiate with the union for a change in retiree benefits. We disagree.

*Rosetto* stands for the proposition that a union has no duty to represent retirees, but that the retirees are free to make the union their agent if they so choose. *Rosetto*, 128 F.3d at 540. The appellants do not dispute that this is the rule of law found in the case, but they argue that since they did not choose to have the union represent them, the union improperly represented them. We find their argument flawed because their position assumes that the retirees have a right to be represented in the negotiation of the CBAs after their retirement. There is, however, no requirement in Wisconsin that retired employees be represented in collective bargaining negotiations between their former employers and the present employees. *Bence v. City of Milwaukee*, 107 Wis. 2d 469, 490, 320 N.W.2d 199, 209 (1982) ("There is no requirement in Wisconsin law that former employees or retired employees are entitled to be 'represented' in the negotiations between present employees, represented by their union, and the [employer].").

Here the retirees did not affirmatively agree to have the union represent them, but they accepted the

terms of other CBAs negotiated by the union after their retirement, and this acceptance implied that they consented to have the union negotiate on their behalf. Thus, we conclude that the retirees implicitly agreed to allow the union to represent them, and the trial court's finding that the City could properly negotiate changes in retiree benefits with the union was correct, both because the retirees were not entitled to representation in such negotiations and, in any event, the union was given the implicit authority to represent the retirees by their acceptance of such previous negotiation.

## B. Vested right to benefits.

Next, the retirees assert that they are entitled to the health care benefits in effect at the time each retiree (then in employee status) completed the required fifteen years of service because the health care benefits vested at that time. They rely on *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978), to support this contention. In *Schlosser*, a dispute arose between Allis-Chalmers and retired non-union employees. The Wisconsin Supreme Court upheld a grant of summary judgment to the retirees, determining that Allis-Chalmers was liable to the plaintiffs for breach of contract for failing to provide free life insurance benefits to retirees over age sixty-five. *See id.* at 230–31, 271 N.W.2d at 881–82. We conclude that the factual distinctions between *Schlosser* and the current case are fatal to the appellants' argument.

In *Schlosser*, the retirees, who were not union employees, derived their benefits from their employment contract with Allis-Chalmers which guaranteed free life insurance for retirees. *See id.* Their contracts, unlike CBAs, were not subject to recurrent negotiation,

and had no expiration date. *See id.* By contrast, the retirees in the present case, who were, for the most part, union members, operated under various CBAs that contained provisions that did change over the years. Further, each CBA expired after a limited amount of time, in most cases, two years. A review of the CBAs reveals that none of them specifically provided continuation of health care benefits beyond the term of the agreement. In fact, for a significant period of time, the CBAs specifically provided that the health insurance premium paid by the retirees was a negotiable item beyond the expiration of the agreement. Thus, *Schlosser* can be distinguished from the facts presented here because *Schlosser* involved a single non-expiring contract with non-union employees which specifically provided continuation of benefits, while this case involves continuously evolving CBAs negotiated by a union, principally for the benefit of union members, with expiring dates which contained no language allowing for continuation of health care benefits beyond the life of the agreement. Further, some of the agreements in the current case explicitly provided that the cost of the health insurance premiums to be paid by the retirees remained a negotiable item. Thus, *Schlosser* provides no support for the appellants' argument.

More on point is *Senn v. United Dominican Industries, Inc.*, 951 F.2d 806, 814 (7th Cir. 1992), where retirees sued their employer, alleging entitlement to lifetime health and life insurance benefits. The retirees in that case claimed that the company was required, under various CBAs entered into over a time period spanning thirteen years, to provide lifetime benefits to retirees. In *Senn*, the Seventh Circuit Court of Appeals concluded that where the agreement is silent as to vest-

ing, no ambiguity is created; instead, the default rule is that "entitlements established by collective bargaining agreements do not survive their expiration or modification." *Id.* at 816 (citing *Merk v. Jewel Cos., Inc.*, 848 F.2d 761, 763 (7th Cir. 1988)) (internal quotation marks omitted).

> We have further recognized the legal proposition that, in the absence of an agreement to the contrary, a company is not obligated to continue retiree welfare benefits after the expiration of the contract:
>
> " . . . [I]f, for example, the 1982–85 agreement had established a plan under which Jewel provided health benefits for its employees and retirees, the Union and Jewel would have been free to abolish those benefits for subsequent periods, even though the Union does not represent retirees. . . . That the retirees had worked in earlier years in the expectation that they were receiving money today and health benefits later would not matter. Because of the time limit on the collective bargaining agreement any subjective expectation they may have had is not enforceable."

*Id.* at 814 (quoting *Merk*, 848 F.2d at 763).

The court in *Senn* concluded that retirees had no vested right to benefits beyond the expiration of the agreements. *Id.* The appellants urge us to find that *Senn* is distinguishable because, unlike the present case, the insurance booklets in *Senn*, which were incorporated by reference, specifically stated that the benefits would expire at the expiration of the labor agreements. They argue that because the CBAs in the current case are silent as to vesting and contain no expiration date for the retiree health care benefits, that the benefits were meant to continue forever. First, we

808

have noted that some of the agreements indicated that the cost of health insurance to the retirees remained a negotiable item. This is strong evidence that the parties did not intend the benefits to be vested for life with the City paying the total cost. Second, although we sympathize with the retirees' predicament, inasmuch as they may have relied on the continuation of benefits for which they now must pay, on what are, presumably, fixed incomes, nevertheless, the minor differences in the factual scenario presented here do not destroy the vitality of the rule of law presented in *Senn*. Although we are not bound by federal case law, we find *Senn* instructive in its determination that "entitlements established by collective bargaining agreements do not survive their expiration or modification," *id.* at 816, and "silence and the explicit repudiation of any possible basis for a lifetime benefits claim in [the CBAs] demonstrate that the signatories to the contract did not intend that a lifetime right to welfare benefits would vest in retirees," *id.* Because none of the CBAs in the current case specifically provides for the vesting of health insurance benefits; and none of the CBAs provides that the same level of benefits would continue until the death of the retiree; and the retirees can point to no other provisions in any of the CBAs that would form a basis for a lifetime benefits claim, we conclude that the trial court properly granted summary judgment to the City.

*By the Court.*—Order affirmed.

FINE, J. *(dissenting)*. This is a contract case, and we are bound by the unambiguous language of the contracts submitted to us for enforcement. *See Cernohorsky v. Northern Liquid Gas Co.*, 268 Wis. 586,

592–593, 68 N.W.2d 429, 433 (1955) (unambiguous contracts must be enforced according to their written terms). We are also bound by supreme court precedent. *See State v. Lossman*, 118 Wis. 2d 526, 532–533, 348 N.W.2d 159, 162–163 (1984).

The plaintiffs here are persons who worked for the City of Glendale, and retired between 1972 and 1996. During this time, the terms of their employment were controlled by collective bargaining agreements with the City. From 1972 until 1974, these agreements provided:

> Any employee who retires at age sixty-five (65) shall be covered under Blue Cross-Blue Shield Medicare Extended - 365 days, with the City paying the entire premium for single or family coverage where applicable.

From 1975 until 1992, these agreements provided:

> Any employee who retires from the City, shall be eligible for Blue Cross-Blue Shield Medicare Extended - 365 days, when such retiree attains age sixty-five (65), with the City paying the entire premium for single or family coverage where applicable.

The 1979–1980 agreement provided that the contribution towards health insurance by retired employees would "remain[ ] a negotiable item upon the expiration of this two year agreement." The 1992–1994 collective bargaining agreement introduced another change:

> Upon retirement, the City agrees to pay up to 105% of the lowest cost health insurance plan available in the City's service area (Milwaukee County) under the State Health Plan for family or single coverage, whichever is applicable until the employee reaches

810

age 65. The retired employee shall pay the difference, if any, between the actual cost of the insurance coverage and the amount paid by the City.

The 1995–1997 collective bargaining agreement provided:

Upon retirement, the City agrees to pay up to 105% of the lowest cost health insurance plan available in the City's service area (Milwaukee County) under the State Health Plan for family or single coverage, whichever is applicable. The retired employee shall pay the difference, if any, between the actual cost of the insurance coverage and the amount paid by the City.

It is the law in this state that rights under an agreement that provides retirement benefits for employees are vested as to those employees who retire while that agreement is in force, even though the agreement reserves the power to modify those rights. *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 245–248, 271 N.W.2d 879, 888–890 (1978). In my view, *Schlosser* governs this case.[1]

*Schlosser*, like this case, concerned retirees who complained that rights under agreements with their

---

[1] Although decisions by federal and other state courts may be persuasive depending upon the cogency of their analyses, we are only bound by decisions of the Wisconsin Supreme Court, published decisions of this court, or, on matters of federal law, decisions of the United States Supreme Court. *See State v. Sweat*, 202 Wis. 2d 366, 373–374, 550 N.W.2d 709, 711 (Ct. App. 1996), *rev'd on other grounds*, 208 Wis. 2d 409, 561 N.W.2d 695 (1997). Here, in my view, *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978), and not the federal decision upon which the majority relies, is dispositive.

employer were changed by the employer after they had retired. *Id.*, 86 Wis. 2d at 230–232, 271 N.W.2d at 881–882. The employer in *Schlosser* gave to a group of its employees free life insurance. *Id.*, 86 Wis. 2d at 230, 271 N.W.2d at 881. Significantly, many of the agreements—embodied in the employer's group life policies—gave the employer the power to either amend the terms of coverage or terminate coverage altogether. *Id.*, 86 Wis. 2d at 230–231, 271 N.W.2d at 881–882. The employer exercised the right to amend and notified retired employees that they would have to pay part of the premiums. *Id.*, 86 Wis. 2d at 231, 271 N.W.2d at 882. All of the plaintiffs in *Schlosser* retired before the modification was implemented. *Id.*, 86 Wis. 2d at 231, 235, 271 N.W.2d at 882, 883–884.

The issue presented in *Schlosser*, as phrased by the court, was whether the employer could "invoke its reserved right to amend the terms of its group life insurance program to require the plaintiffs to contribute to the cost of the policy." *Id.*, 86 Wis. 2d at 245, 271 N.W.2d at 888. The supreme court said that the employer could not, even though the employer retained "a sweeping reserved power of amendment exercisable at the exclusive option of the company." *Id.*, 86 Wis. 2d at 246–247, 271 N.W.2d at 889. *Schlosser* explained:

> To permit such a power of amendment to be exercised by an employer to effect a unilateral change in a retirement plan as to employees who have fully performed their services and whose rights under the plan thus became vested would truly be to render the plan a mere gratuity.

*Id.*, 86 Wis. 2d at 247, 271 N.W.2d at 889. The employees' rights under the agreements became vested when they retired (even though none of the agreements used

that term, and, indeed, as we have seen, the agreements reserved to the employer the right to change the terms of coverage or eliminate it entirely) because it was then that they had completed their part of the employment bargain. *See ibid.*

In my view, the contractual provisions here are not distinguishable from those considered in *Schlosser.* Accordingly, the retirement rights of each plaintiff here are those set out in the collective bargaining agreement in effect when he or she retired. I would reverse.