**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO
LOCAL 1245,
             *Petitioner-Appellee,*

             v.

CITIZENS TELECOMMUNICATIONS CO.
OF CALIFORNIA,
             *Respondent-Appellant.*

No. 06-16189

D.C. No.
CV-06-00677-WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted
June 12, 2008—San Francisco, California

Filed December 5, 2008

Before: Mary M. Schroeder, John M. Walker, Jr.,[1] and N.
Randy Smith, Circuit Judges.

Opinion by Judge Walker

---

[1]The Honorable John M. Walker, Jr., Senior Circuit Judge of the United
States Court of Appeals for the Second Circuit, sitting by designation.

## COUNSEL

Thomas M. Beck, at argument, and Peter E. Davids, on the briefs, Jones Day, San Francisco, California, for appellant Citizens Telecommunications Company of California.

Shawn C. Groff, at argument, and Lynn Rossman Faris, on the briefs, Leonard Carder, LLP, Oakland, California, for appellee International Brotherhood of Electrical Workers, AFL-CIO Local 1245.

**OPINION**

WALKER, Circuit Judge:

Appellant Citizens Telecommunications Co. (Citizens) and Appellee International Brotherhood of Electrical Workers, AFL-CIO Local 1245 (IBEW) are parties to a Collective Bargaining Agreement (CBA) in effect from October 2004 through September 2008. IBEW sought an order compelling Citizens to arbitrate IBEW's claim that Citizens had violated the CBA by reducing employee retirement benefits. The district court granted the motion to compel arbitration and Citizens appealed, arguing that IBEW cannot arbitrate its grievance without first obtaining consent from the retirees currently eligible for benefits under the CBA. We affirm.

## I.    Background

Article 24.1 of the CBA provides that the "Citizens Utilities Medical Plan," which includes the "Retiree Medical" plan, "shall be provided for all eligible employees in accordance with the terms of said plans." This article further provides that Citizens may "make changes" to the plan, provided that, inter alia, "[t]he changes do not reduce the overall level of benefits." Article 24.1 also contains the following arbitration provision:

> In the event that any dispute arises as to whether the proposed change does or does not reduce the overall level of benefits the dispute will be referred to expedited arbitration without exhaustion of the grievance procedure.

In November 2005, Citizens informed IBEW, the exclusive bargaining agent for a group of Citizens employees, that it was making changes to its medical plan that would affect both current employees and retirees. In particular, Citizens purported to cancel retiree medical benefits, beginning in January

2006, for any "medicare eligible" retiree. In response, IBEW filed two grievances. The first, Grievance 5-07, sought relief from Citizens' decision to increase the medical plan premiums paid by active employees. The second, Grievance 5-08, alleged that Citizens "unilaterally made changes to the retiree medical plan" and therefore violated the CBA because those changes would "reduce the overall level of benefit to the retiree plan." In this grievance, IBEW requested that Citizens "rescind any and all unilateral retiree medical benefit reductions and reimburse retirees appropriately and retroactively." This grievance also requested "expedited arbitration" pursuant to Article 24.1 of the CBA.

Citizens, while agreeing to arbitrate Grievance 5-07, refused to arbitrate Grievance 5-08. In a letter from Citizens' Associate General Counsel to IBEW's Senior Assistant Business Manager, Citizens contended that IBEW was "attempting to grieve issues related to current retirees" who were "formerly represented by the Union." Because the union did not currently represent those employees, and because, Citizens asserted, "the Union is not raising an issue covered by the current CBA between the parties," Citizens claimed that Grievance 5-08 was not arbitrable under the CBA.

In April 2006, IBEW sued Citizens in the Eastern District of California seeking to compel arbitration. In opposition, Citizens did not contend that the grievance was beyond the scope of the arbitration provision. Instead, Citizens argued that IBEW "lacks standing to represent the interests of *former* employees who are no longer members of the union." *Int'l Bhd. of Elec. Workers v. Citizens Telecomms. Co. of Cal.* (*IBEW I*), No. CIV S-06-0677, slip op. at 4 (E.D. Cal. May 17, 2006). The district court observed that "the bulk of authority addressing the issue" has endorsed a rule requiring retiree consent in order for the union to represent the interests of retirees. *Id.* at 8. The district court ultimately rejected this rule as "inconsistent with the Ninth Circuit's understanding of the role and purpose of unions," and out of step with "accepted

principles of contract law." *Id.* at 9. The district court granted IBEW's motion to compel arbitration of Grievance 5-08 over the cancellation of certain medical benefits, and Citizens filed this appeal.

## II.   Discussion

The district court properly found subject matter jurisdiction under 29 U.S.C. § 185(a), and we have appellate jurisdiction under 28 U.S.C. § 1291. "The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

## A.   The CBA Requires Arbitration

Citizens does not dispute that Grievance 5-08 raises an issue that is subject to the expedited arbitration procedures of the CBA. As a general rule, a party's duty to arbitrate depends on contract law:

> [A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is *not susceptible of an interpretation that covers the asserted dispute*. Doubts should be resolved in favor of coverage.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (emphasis added). In Grievance 5-

08, IBEW contends that Citizens' new policy reduces the overall level of benefits in contravention of Article 24.1 of the CBA. Citizens contends that it does not. This is the issue IBEW seeks to submit to arbitration, and the plain language of the CBA imposes on Citizens a duty to arbitrate. Citizens did not contest the existence of this duty before the district court, *IBEW I*, slip op. at 3-4 ("respondent does not contend that the aforementioned modifications . . . do not . . . trigger the [Article 24.1] duty to arbitrate"), and it does not do so here. Instead, Citizens contends that the district court erred in not "requiring a union to obtain the consent of affected retirees before arbitrating claims concerning their benefits," and Citizens urges this court to join the Fifth,[2] Sixth, and Seventh Circuits in requiring the union to do so. Appellant's Br. at 2. In advancing this position, Citizens relies primarily on *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997), and *Cleveland Electric Illuminating Co. v. Utility Works Union Local 270*, 440 F.3d 809 (6th Cir. 2006). While these cases do not bind the Ninth Circuit, they are plainly relevant to our consideration and thus merit further examination.

## B.   *Rossetto* and *Cleveland Electric*

In *Rossetto*, a collective bargaining agreement between Pabst (the employer) and District 10 (the union) provided certain benefits to retirees. In June 1995, when the CBA expired, Pabst proposed eliminating the retiree benefits from a successor agreement to that CBA, and District 10 rejected the proposal. In August 1996—a year later—Pabst informed retirees (but not District 10) that it would be terminating the same

---

[2]Citizens cites *International Ass'n of Machinists & Aerospace Workers Local Lodge 2121 v. Goodrich Corp.*, 410 F.3d 204, 213 (5th Cir. 2005), in support of its contention that the Fifth Circuit has endorsed the rule that Citizens now urges us to adopt. In *Goodrich*, however, the Fifth Circuit found it unnecessary to determine whether a union's failure to obtain retiree consent deprived it of standing to represent retirees in a federal suit to compel arbitration, because the union in that case had obtained consent. *Id.* at 212.

retiree benefits as of September 1, 1996. On August 12, after learning of Pabst's actions, District 10 filed a grievance alleging that the unilateral termination of retiree benefits breached the CBA. In September 1996, a group of retired Pabst employees also sued Pabst in federal court seeking reinstatement of the benefits on the grounds that Pabst's termination action violated the CBA and the Employee Retirement Income Security Act (ERISA). In November 1996, Pabst reinstated the retiree benefits and agreed to extend the expired CBA through January 31, 1997. A day before the CBA was again set to expire, District 10 notified Pabst of its desire to arbitrate its August grievance, pursuant to a provision of the CBA providing for arbitration of certain grievances. The combined effect of the notice and the expiring CBA was that the arbitration would pertain only to employees who had already retired, and not to current employees. Pabst refused to arbitrate, and the federal plaintiffs amended their complaint to request an order compelling arbitration of the grievance. The district court granted the motion to compel, and Pabst appealed. *See Rossetto*, 128 F.3d at 538-39.

At oral argument, the Seventh Circuit panel *sua sponte* raised "a critical threshold question—whether District 10 has standing to pursue the retirees' grievance to arbitration." *Id.* at 539. The court observed that, in general, "a union has standing under Article III of the Constitution to arbitrate the meaning of a collective bargaining agreement that grants rights to third parties (in this case, retirees) simply by virtue of the fact that the union is a party to the contract," and that when the union and employer arbitrate, the union serves as the "grievants' representative." *Id.* (emphasis added). But because District 10 was not the "exclusive bargaining representative" of the retiree plaintiffs, "any claims for benefits here belong to the retirees individually, and the retirees may deal directly with Pabst in pursuing such claims." *Id.* at 540. The Seventh Circuit further opined that any arbitration involving retirement benefits would bind the retirees: "If District 10 loses in arbitration, the retirees lose, period." *Id.* As a result,

"any right District 10 has to pursue arbitration of the retirees' grievance must come from the retirees." *Id.* Because District 10 did not have the consent of the retirees, the court concluded that "District 10 lacks standing to bring the retirees' grievance to arbitration," and it dismissed the appeal for lack of jurisdiction. *Id.* at 541.

While the benefit changes in *Rossetto* only affected employees that had retired, in *Cleveland Electric*, the employer (Cleveland Electric) made a number of changes to the health care benefits of both active and retired members of the union. *Cleveland Elec.*, 440 F.3d at 811. An arbitrator decided that "since the Union and Cleveland Electric agreed to include retirees' benefits in the CBA, the Union had standing to seek arbitration on behalf of the retirees for benefits that were included in the CBA." *Id.* Cleveland Electric brought suit to have the decision vacated, and the district court held, in relevant part, "that the retirees, unlike the active employees, had individual contractual rights and that they could not be forced to arbitrate their grievance," and therefore "the retirees must consent to the Union's representation." *Id.* at 811-12. The Sixth Circuit affirmed, holding that "[i]n order to arbitrate a retiree's benefits, the Union must obtain the consent of the retiree. It will be the arbitrator's responsibility to establish the nature and extent of the consent requirement." *Id.* at 818. Relying on *Rossetto*, the court noted "at least two dangers in failing to require" consent: the danger that the retirees could lose their right to pursue claims directly if the union loses in arbitration, and the danger that "Cleveland Electric could be faced with numerous retirees' claims and lawsuits if a determination is made that the Union was not authorized to act on the retirees' behalf." *Id.* at 817.

## C.   The Proposed Consent Rule

Citizens contends that these cases establish a rule that bars unions from arbitrating disputes "relating to retiree benefits" without the consent of affected retirees. Appellant's Br. at 8.

While we believe that this is a plausible reading of *Rossetto* and *Cleveland Electric*, we decline to adopt such a broad rule. The rule that Citizens would have us apply here ignores the fact that reductions in retiree benefits may also affect current employees who are undisputedly still represented by the union under an extant CBA, and it is based on unsound assumptions about the preclusive effect of arbitration involving retiree benefits.

### 1.   Citizens's Action Affects Current Employees

**[1]** First, the consent rule that Citizens divines from *Rossetto* and *Cleveland Electric* fails to account for the fact that an impermissible reduction in retirement benefits under the CBA affects current employees as well as retirees. This was not a problem in *Rossetto* because the dispute implicated only the benefits of employees who had retired.

**[2]** As the Supreme Court has pointed out, "the future retirement benefits of active workers are part and parcel of their overall compensation." *Allied Chem. & Alkali Workers Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 180 (1971). Thus, when IBEW seeks an arbitration order to determine whether Citizens has impermissibly reduced retirement benefits, it does so, at least in part, on behalf of current employees. After all, in order for a current employee to make a prudent decision about when to retire, accurate information about his entitlement to retirement benefits is crucial.

**[3]** Citizens, citing *Allied Chemical*, contends that this dispute does not involve the benefits of current employees because any effect on a current employee's benefits is only "speculative." Appellant's Reply Br. at 2. We disagree. This argument distorts *Allied Chemical* beyond recognition—in that case, as noted above, the Supreme Court observed that future retiree benefits were "part and parcel" of an active employee's compensation. The only thing that was specula-

tive in *Allied Chemical* was the advantage gained by active workers by including retirees in their bargaining unit when negotiating a CBA. 404 U.S. at 180. *Allied Chemical* does not suggest that the actual retirement benefits contractually promised to an active employee are speculative and therefore an inappropriate subject of arbitration. The CBA here imposes a duty to arbitrate a disputed reduction in benefits, and nothing in *Allied Chemical* suggests that IBEW cannot enforce this duty because current workers are not yet eligible to receive the contested benefits.

## 2.    Preclusive Effect of Arbitration on Retirees

In addition, we think the consent rule suggested by appellant relies on unsound assumptions about the preclusive effect of arbitration involving retiree benefits. The decision in *Rossetto* simply assumed that any arbitration of retiree benefits between a union and an employer would bind current retirees. *See* 128 F.3d at 540 ("If District 10 loses in arbitration, the retirees lose, period."). Thus, the *Rossetto* court required the retirees' consent because that court felt it unjust to bind them without it.

**[4]** Even if we assume that it is proper to base the outcome of an initial proceeding (the motion to compel arbitration) on the preclusive effect of a second proceeding (the arbitration) upon a hypothetical third proceeding (the suit by the individual retiree), the underlying assumption of preclusion does not withstand scrutiny. First, we will not assume that either the arbitration in *Rossetto* or the arbitration contemplated here would preclude subsequent suits by individual retirees. The one circuit court that we know to have reached the issue in similar circumstances decided that a union's pursuit of arbitration, ostensibly undertaken on behalf of retirees, did not preclude a later individual claim arising from the same set of facts. *See Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990). While we cannot definitively say that there are *no* circumstances in which a union's arbitration would

have *some* preclusive effect on a subsequent suit by a former member no longer represented by the union, the result in *Meza* certainly suggests that such preclusion would occur very rarely, if at all; it seems extremely unlikely that a court would apply claim preclusion against an individual retiree based on an arbitration to which that retiree was not a party, nor represented by a party. Thus, we disagree with the *Rossetto* court's conclusion that allowing arbitration concerning retiree benefits without consent of the retirees would "hijack the retirees' right to pursue their statutory claims by forcing arbitration." 128 F.3d at 541.

The *Cleveland Electric* court discussed a second harm that it felt justified imposing a consent rule: the harm to the employer of having to relitigate a favorable arbitral outcome in suits by individual retirees. (Presumably, an unfavorable arbitral outcome would preclude further resistance by the employer in individual action under principles of issue preclusion.) This relitigation possibility led the *Cleveland Electric* court to require the union to obtain retiree consent, and thereby bind the retirees to the result of the arbitration. The court reasoned that retirees would otherwise get a second bite at the apple in an individual proceeding even if the employer prevailed against the union in arbitration. *See* 440 F.3d at 817.

**[5]** This harm is also insufficient to justify the creation of a "consent rule" that prevents the union from arbitrating an otherwise arbitrable grievance. The fact that Citizens may be exposed to allegedly duplicative proceedings is a result of its own bargaining. We will not write into the CBA a consent requirement provision for which Citizens failed to bargain.

## D.  IBEW's Standing in Federal Court

**[6]** Citizens also contends that IBEW lacks standing to compel arbitration of retirees' claims because it has not demonstrated "injury in fact" and because it cannot assert the

rights of third parties in federal court.[3] [BB 18] But the right to arbitration that IBEW asserts in federal court is plainly "an invasion of a legally protected interest" that affects IBEW "in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992). Even if this right belongs to the CBA's third-party beneficiaries (the current employees and retirees), rather than the contracting party (the union), denial of this right affects the union in a personal and individual way: IBEW is forced to incur the expense of either suing in federal court to compel arbitration or litigating the alleged violation of the CBA itself in federal court.

---

[3]We note at the outset that this standing argument is distinct from appellant's argument that the union cannot *arbitrate* certain claims (those involving retiree benefits) without retiree consent. Although the *Rossetto* opinion suggests that the latter issue also involves principles of standing, *see* 128 F.3d at 541 (concluding that the union "lacks standing to bring the retirees' grievance to arbitration"), we do not share this view. The Supreme Court's constitutional and prudential standing doctrines, as enunciated in cases like *Warth v. Seldin*, 422 U.S. 490 (1975), are used to determine who may sue in federal court. Because standing is based on constitutional limitations on the "judicial Power" of the federal courts, *see generally* U.S. Const. art. 3, it does not bear on the issue of whether a certain claim can be brought before an arbitrator. Thus, we believe it is misleading to say, for example, that "[a]s a general principle, a union has standing under Article III of the Constitution to arbitrate the meaning of a collective bargaining agreement." *Rossetto*, 128 F.3d at 539. Article III creates and limits the power of the federal courts, and is therefore not implicated in a dispute before a non-Article III tribunal, such as an arbitrator. In addition, we know of no other doctrine of constitutional or prudential standing under which the consent of a third party can cure a plaintiff's lack of standing.

The consent rule announced in *Rossetto* or *Cleveland Electric* more closely resembles an implied-in-law contract term: because a court believes it is unfair to compel arbitration without obtaining retiree consent, it conditions the union's right to arbitration on its obtaining the consent of affected retirees. *See, e.g., Bhd. of Locomotive Eng'rs v. Burlington N. R.R..*, 838 F.2d 1102, 1113 (9th Cir. 1988) ("[A] collective bargaining agreement may include terms which, although omitted from the text of the agreement, are nonetheless part of the agreement because they are implied-in-law."). As discussed above, we see no reason to imply such a term in this case.

**[7]** The alleged uncertainty as to whether the right to arbitration technically belongs to IBEW itself, rather than its individual members, does not deprive IBEW of standing. A union has standing to sue on behalf of its members if the prerequisites of associational standing are met, *see United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996), and Citizens does not argue that these requirements are not satisfied as to IBEW's current members.

**[8]** Instead, Citizens contends that IBEW cannot avail itself of associational standing because the retirees are not union members. But where, as here, the union has associational standing to bring a suit to compel arbitration on behalf of its current members, we know of no rule depriving it of that standing solely because it may lack standing to bring suit on behalf of non-members.

Accordingly, we conclude that the district court properly granted IBEW's petition to compel arbitration, and its judgment is

**AFFIRMED.**