# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-4065

EXELON GENERATION COMPANY, LLC,
EXELON BUSINESS SERVICES COMPANY, AND
COMMONWEALTH EDISON COMPANY,

*Plaintiffs-Appellants*,

*v.*

LOCAL 15, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 968—**Matthew F. Kennelly**, *Judge.*

_____

ARGUED MAY 13, 2008—DECIDED SEPTEMBER 2, 2008

_____


Before EASTERBROOK, *Chief Judge,* and KANNE and
TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Exelon Generation Company, LLC,
Exelon Business Services Company, and Commonwealth
Edison Company ("Exelon") filed a complaint for declara-

tory judgment against Local 15, International Brotherhood of Electrical Workers, AFL-CIO ("Local 15" or "Union"), seeking a determination that disputes over Exelon's changes to medical benefits for retirees are not within the scope of the parties' collective bargaining agreement ("CBA") or arbitrable under the grievance procedure and that Local 15 may not represent the retirees. The parties filed cross-motions for summary judgment. The district court granted the Union's motion and denied Exelon's motion, concluding that the Union may represent the retirees in arbitration and that the matter was subject to arbitration. Judgment was entered. Exelon appeals.

## I.  Background

Exelon and Local 15 are parties to a CBA. They have engaged in collective bargaining for over fifty years and have bargained over mandatory bargaining subjects such as working conditions and wages as well as permissive bargaining subjects such as retiree medical benefits that become effective upon a bargaining unit employee's retirement. The terms of the retiree medical benefits have been memorialized in Memoranda of Agreement Reached in Collective Bargaining ("MOAs") which supplemented and became part of the CBA.

In January 2004, Exelon made various unilateral changes to the retiree medical benefits. These changes immediately affected certain retirees and may also affect current employees when they retire. This led to a dispute between Exelon and the Union over the interpretation and applica-

tion of the retiree medical benefit provisions. The Union believes that the dispute is within the scope of the CBA's four-step grievance procedure which states in part: "Should any dispute or difference arise between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement . . . the dispute or difference shall be settled through the grievance procedure." If a dispute is not resolved at steps one through three, then at step four, at the request of a party to the grievance, the dispute shall be referred to arbitration. The grievance procedure states: "All decisions rendered by the impartial arbitrator shall be final and binding on both parties."

On October 4, 2005, the Union filed a grievance under step 1 of the grievance procedure, alleging that Exelon violated the CBA and MOAs "with respect to retiree medical plans, premiums, and prescription drug costs for active and retired employees." In the section entitled "Name of Employee(s)," the Union wrote, "For the good of the Union." The grievance proceeded through steps 1, 2 and 3 of the grievance procedure without resolution. On February 19, 2006, the grievance proceeded to step 4, when the Union referred the grievance to arbitration. Exelon participated in the selection of an arbitrator and hearing dates. However, Exelon later argued that "retirees are not part of the bargaining unit and Exelon does not have an obligation to . . . bargain with Local 15 with respect to current retirees."

Exelon provides medical benefits to approximately 5,889 bargaining-unit retirees and their dependents. The Union

does not have the consent of all retirees affected by Exelon's changes to retiree medical benefits to represent them in arbitration of the dispute. Seven retirees have consented to representation by the Union in the grievance procedure, though not in writing. No affected retiree has filed an individual action against Exelon over the changes to the retiree medical benefits.

On February 20, 2007, Exelon filed a complaint for declaratory judgment, seeking a declaration that disputes over its decisions to modify retiree medical and prescription drug benefits are not subject to arbitration under the CBA. The parties filed cross-motions for summary judgment, raising two issues of arbitrability and an issue of the Union's standing. The district court granted the Union's motion for summary judgment and denied Exelon's motion. The court first decided that the dispute between the Union and Exelon over retiree medical benefits falls within the scope of the grievance procedure in the CBA. Second, it concluded that Exelon had consented to arbitrate the underlying retiree medical benefit dispute. And, finally, the court concluded that the Union could represent the retirees who consented to its representation; consent of all affected retirees was not necessary for the Union to pursue arbitration.

## II. Analysis

We review de novo the district court's decisions on the cross-motions for summary judgment. *Rickher v. Home Depot, Inc.*, No. 07-2850, 2008 WL 2877515, at *3 (7th Cir. July 28, 2008). In this case we address (1) whether Exelon

consented to arbitration of a dispute over retiree medical benefits brought by the Union on behalf of retirees, and (2) whether the Union may arbitrate a dispute under the CBA on behalf of affected retirees when it has the consent of a few but not all of the affected retirees.[1] Before getting to the substantive issues presented on appeal, we must first assure ourselves that we have appellate jurisdiction.

## A. Appellate Jurisdiction

A question arose at oral argument of whether a final judgment had been entered by the district court, and we ordered the parties to file supplemental memoranda addressing the issue. The parties complied with the order, and we are satisfied that we may properly exercise appellate jurisdiction.

"Unless the plaintiff loses outright, a judgment must provide the relief to which the winner is entitled. That motions have been granted is beside the point." *Rush Univ. Med. Ctr. v. Leavitt*, Nos. 07-3648, 08-2227, 2008 WL 2941220, at *1 (7th Cir. Aug. 1, 2008); *see also Perlman v.*

---

[1] Exelon does not challenge the district court's conclusion that the dispute over retiree medical benefits falls within the scope of the CBA's grievance procedure. The operative provision—"any dispute or difference . . . between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement . . . shall be settled through the grievance procedure"—easily encompasses this dispute.

*Swiss Bank Comprehensive Disability Prot. Plan*, 195 F.3d 975, 977 (7th Cir. 1999); *Reytblatt v. Denton*, 812 F.2d 1042, 1044 (7th Cir. 1987). A judgment must "specify what matters: the *consequence* of the judicial ruling." *Rush Univ. Med. Ctr.*, 2008 WL 2941220, at *1. If, however, the final disposition of the case can easily be inferred, then the appeal may go forward "despite technical shortcomings." *Id.*; *see also Metzl v. Leininger*, 57 F.3d 618, 620 (7th Cir. 1995) ("If it is plain what the judgment declares . . . and it is also plain that the district court is finished with the case . . . there is appellate jurisdiction."); *Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554, 559 (7th Cir. 1991) (concluding appellate jurisdiction existed even though district court did not technically enter a declaration of the parties' rights but intended to enter a final judgment).

Exelon filed a complaint for declaratory judgment, seeking a declaration that disputes over its decisions to modify retiree medical and prescription drug benefits are not subject to arbitration under the CBA. The Union filed an answer, and the parties filed cross-motions for summary judgment. On December 3, 2007, the district court entered three documents on its docket. It entered its Memorandum Opinion and Order in which it determined that plaintiffs were not entitled to the declaratory relief sought in their complaint and directed the clerk to enter judgment in favor of the defendant. The court also entered a Minute Order which said:

> For the reasons set forth in the Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment (34) and denies

plaintiffs' motion for summary judgment (39). Defendant's motion to compel discovery is terminated as moot (29). The clerk is directed to enter judgment in favor of the defendant.

And, finally, the clerk entered a document entitled "JUDGMENT IN A CIVIL CASE," which read:

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Court grants defendant's motion for summary judgment and denies plaintiffs' motion for summary judgment. Judgment is entered in favor of the defendant.

Although it would have been clearer had the judgment indicated that the plaintiffs would take nothing and that the case was dismissed, the failure to include this language does not render the judgment non-final and unappealable. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002). Unlike *American Interinsurance v. Occidental Fire & Casualty Co.*, 835 F.2d 157 (7th Cir. 1987), in which both sides sought declaratory relief and thus the final judgment had to include a declaration of rights, here, only Exelon sought a declaratory judgment. The Union neither filed a counterclaim nor sought any declaration of the parties' rights. And although the Union filed its own motion for summary judgment, it merely sought a judgment against Exelon on the complaint for declaratory relief. Furthermore, the district court's Minute Order, Memorandum Opinion and Order, and Judgment in a Civil Case together indicate that there is nothing left to be

decided and that court is done with the case. The judgment itself is clear that the plaintiff Exelon loses; judgment is for the defendant Local 15. Therefore, the judgment is final and we have appellate jurisdiction. We thus move on to the merits of the appeal.

### B. Exelon's Consent to Arbitrate Disputes Over Retiree Medical Benefits

Exelon contends that it did not agree to arbitrate a grievance brought by the Union on behalf of retirees. The district court concluded otherwise. The court reasoned that because the CBA includes provisions that apply specifically to retirees,

> when the CBA says that disputes over its interpretation or application are subject to arbitration, that necessarily includes disputes over retiree rights that the CBA confers. In short, by entering into a CBA that included terms according rights to retirees as well as a broad obligation to engage in arbitration over disputes about the CBA, [Exelon] consented to arbitration of grievances brought on behalf of retirees.

The court also relied on the presumption of arbitrability, requiring an express provision or forceful evidence to exclude the retiree grievance from arbitration. We have said:

> "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular

> grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Int'l Bhd. of Elec. Workers, Local 21 v. Ill. Bell Tel. Co.*, 491 F.3d 685, 687-88 (7th Cir. 2007) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotations omitted)).

Exelon argues that *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997), compels a different conclusion than that reached by the district court. The CBA in *Rossetto* provided for health benefits for retired employees and their dependents, *id.* at 538, and the CBA's arbitration provision provided for appeal to arbitration of "all grievances . . . between the Company and its *employees*" that "that cannot be satisfactorily settled" by the grievance process. *Id.* at 539 (emphasis added). Pabst unilaterally eliminated retiree health benefits and the union filed a grievance on behalf of the affected retirees, alleging a breach of the CBA. The union also filed a civil action on behalf of all the retirees, seeking reinstatement of the terminated benefits. The union eventually appealed the grievance to arbitration, and Pabst refused to arbitrate. The district court certified a class consisting of all the retirees, their spouses, and dependents, who were represented by the union. The plaintiffs sought to compel arbitration of the union's grievance, their motion was granted, and Pabst appealed. *Id.* We held that the union lacked standing to represent the retirees in arbitration

unless the retirees consented to the union's representation and Pabst consented to bargain with the union as the agent of the affected retirees. *Id.* at 541.

Exelon is correct that the mere fact that a CBA creates the retirees' rights to medical benefits may be insufficient to establish that the company agreed to arbitrate disputes over retiree medical benefits. We know as much from *Rossetto*. After all, the CBA there provided for retiree health benefits, but this was insufficient by itself to support the conclusion that Pabst agreed to arbitrate retiree claims. But there is a critical distinction between the CBA in *Rossetto* and the one in this case: The CBA in *Rossetto* expressly defined an arbitrable grievance as one between Pabst and an "employee." And retirees are not employees. *Id.* at 540. The CBA here, however, does not define an arbitrable grievance as one between the company and an employee. Nor does the CBA in this case expressly restrict arbitration to grievances by employees. The arbitration agreement is broader than that. The grievance procedure applies to "any dispute or difference . . . between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement . . . ." Exelon has agreed that a dispute exists between it and the Union regarding the interpretation and application of the retiree medical benefit provisions of the MOAs, which are part of the CBA.

Exelon contends that the CBA contains specific language plainly limiting the grievance procedure to disputes brought by the Union on behalf of current employees. For example, Exelon points to the following: "It is the intent

of the Company, Local Union 15, and the *employees* that timely filed grievances shall be settled promptly" (emphasis added); the deadline for filing a grievance runs from the date that the "*employee* became aware or reasonably should have become aware of the incident which is the basis for the grievance" (emphasis added); and "[t]he dispute or difference shall be presented and first discussed by the *employee* concerned and the immediate Supervisor." (Emphasis added). None of these provisions, however, or any other provision in the CBA we might add, expressly excludes from arbitration a grievance brought by the Union on behalf of retirees. The parties could have written the CBA to exclude retiree grievances from the arbitration agreement if they had intended to, but they did not.

Exelon also points to the CBA's representation and recognition clause, which it claims demonstrates the parties' intent that the grievance provisions apply only to current employees and not retirees. That clause recognizes the Union as the "exclusive bargaining representative for all employees in" the bargaining unit. However, it does not follow from the fact that Exelon recognizes the Union as the exclusive bargaining representative for bargaining unit employees that Exelon could never recognize the Union as the representative of retirees in arbitration. The clause does not clearly limit Exelon's agreement to arbitrate to disputes involving only current employees.

Any doubt about whether Exelon agreed to arbitrate disputes brought on behalf of retirees is resolved by application of the presumption of arbitrability. "[A]rbitra-

tion is favored and should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 (7th Cir. 1987) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). "Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation Co.*, 363 U.S. at 583. The presumption of arbitrability is particularly applicable where the arbitration provision is broad. *United Steelworkers v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 279 (6th Cir. 2007). Where the arbitration provision is broad, as it is here, only an "'express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration'" can keep the claim from arbitration. *AT&T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 584-85). Several of our sister circuits have applied the presumption of arbitrability to disputes involving retirees. *United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 560-61 (9th Cir. 2008) (applying presumption of arbitrability where union sought arbitration and filed a complaint to compel arbitration); *Cleveland Elec. Illuminating Co. v. Util. Workers Union*, 440 F.3d 809, 816 (6th Cir. 2005) ("[T]he presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their [CBA]. . . ."); *United Steelworkers of Am., AFL-CIO v. Canron, Inc.*, 580 F.2d 77, 82 (3d Cir. 1978) (applying presumption). *But see Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293, 1295-98 (8th Cir. 1985).

We will apply the presumption of arbitrability here as well. First of all, as noted, the arbitration provision is quite broad. The grievance and arbitration procedure covers "any dispute . . . as to the interpretation or application of any of the provisions of this Agreement" and the retiree medical benefits are created by provisions of the MOAs, which have supplemented and become part of the CBA. And it was the Union rather than the retirees that filed the grievance asserting a violation of the CBA and MOAs with respect to retiree medical benefits. Furthermore as Exelon concedes, the dispute is between the Union and Exelon. And the Union may resort to its economic weapons—it also represents the bargaining unit's interests in maintaining retiree medical benefits. These considerations counsel in favor of applying the presumption of arbitrability. *See Asarco*, 512 F.3d at 560-61; *Cleveland Elec. Illuminating Co.*, 440 F.3d at 816.

Moreover, the CBA contains no express provision excluding retiree grievances from the grievance and arbitration procedure. The language cited by Exelon, *supra*, is neither clear nor "forceful evidence" of a purpose to exclude a dispute over retiree medical benefits from the grievance and arbitration procedure. An interpretation of the arbitration language so as to include disputes between Exelon and the Union over retiree medical benefits is a reasonable one given the breadth of the grievance and arbitration procedure. And where both the Union's and Exelon's competing interpretations are reasonable, it cannot be said with "positive assurance" that the grievance and arbitration procedure is not suscep-

tible to an interpretation that covers the dispute over retiree medical benefits. Therefore, we find no error in the district court's conclusion that Exelon consented to arbitrate disputes over retiree medical benefits.

### C.  Whether the Union May Represent a Few Retirees in Arbitration

The Union has the consent of a few, but not all, of the current retirees affected by Exelon's changes to retiree medical benefits. Exelon contends that in *Rossetto* we held that a union may not represent any retiree in arbitration unless it obtains consent from all the affected retirees to represent them. Exelon again misunderstands *Rossetto*. In *Rossetto* we recognized that the union was not the exclusive bargaining representative of the retirees. Thus the retirees' claims "for benefits [] belong to the retirees individually, and the retirees may deal directly with Pabst in pursuing such claims." *Rossetto*, 128 F.3d at 540. But we did not foreclose the possibility of union representation of retirees in arbitration. We said:

> This is not to say that a union can never take retirees' claims to arbitration. Although a union has no duty to represent retirees, and retirees need not submit to union representation, retirees are free to make a union their agent if they so choose. And, of course, retiree benefits are a permissive subject of bargaining—a union may bargain for retirees if the employer agrees. What we *are* saying is that any right District 10 has to pursue arbitra-

tion of the retirees' grievance must come from the
retirees.

*Id.* (internal citations omitted). We concluded that the
union did "not have any right to represent the retirees
making up the class in this case unless each of the retirees
assents to its representation." *Id.* at 541. The record
lacked any evidence that each of them had consented;
thus, we held that the union lacked standing to arbitrate
the retirees' grievance. *Id.*

However, in *Rossetto* the retirees' litigation seeking
reinstatement of their terminated retiree benefits and the
union's appeal to arbitration of its grievance over the
elimination of those benefits were proceeding simulta-
neously. The district court certified a class consisting of
all retirees, and the union and four retirees were named
as class representatives. *Id.* at 539. The union argued that
the litigation and the arbitration could proceed on parallel
paths. *Id.* at 540. This argument was rejected:

> The implication of allowing District 10 to take the
> retirees' grievance to arbitration is that none of the
> forty-one retirees making up the class can pursue
> separate litigation of their statutory claims. If
> District 10 loses in arbitration, the retirees lose,
> period.
>
> . . . The retirees['] . . . ERISA claims . . . are not free-
> standing—for practical purposes, arbitration
> would dispose of all of the retirees' claims. District
> 10 cannot hijack the retirees' right to pursue their
> statutory claims by forcing arbitration.

*Id.* at 540-41. Importantly, the litigation and arbitration involved the same parties and the same claims asserted by the retiree class in litigation and by the union purportedly on the retirees' behalf in arbitration. It was in this context of parallel proceedings that we said that the union could not force the retirees to arbitrate their claims.

Here, in contrast, the Union is not seeking to arbitrate claims regarding retiree medical benefits on behalf of retirees while those same retirees are simultaneously litigating claims over those benefits in court. The district court was correct in declining to read *Rossetto* as requiring the consent of each and every affected retiree in this context in order to give effect to a single retiree's agreement to arbitrate his or her claim. To require the consent of all in effect would allow those retirees who choose not to consent to the Union's representation in arbitration to "hijack" the rights of the retirees who do consent to such representation and arbitration. *See id.* at 540 (explaining "retirees are free to make a union their agent if they so choose").

Any doubt about the reach of *Rossetto* can be resolved by consideration of *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir. 1997), upon which *Rossetto* relied. In *Pryner* we considered whether a CBA can compel an employee to arbitrate a claim that he may have under a federal statute such as a Title VII claim. *Id.* at 355. We held that the union could not agree on the employees' behalf to arbitrate their Title VII claims. *Id.* at 363. But we did not hold that the employees' statutory claims were never arbitrable: they were if the employee consented to arbitra-

tion. We said: "If the worker brings suit, the employer suggests that their dispute be arbitrated, the worker agrees, and the collective bargaining agreement does not preclude such side agreements" the employee's claims are arbitrable. *Id.* Thus, neither *Pryner* nor *Rossetto* requires that *all* employees/retirees consent to arbitration before the consent of one employee/retiree can be given effect. These cases allow for each employee or retiree *individually* to decide whether to consent to arbitration of his or her own claims. *Pryner* further indicates that where the employee/retiree and employer/former employer agree to arbitration, "there is nothing to prevent a *binding* arbitration." *Id.*; *see also Cooper Tire & Rubber Co.*, 474 F.3d at 283 (finding "there is no real danger that Cooper would have to relitigate the same issues with individual retirees that will have already been arbitrated with the Union"); *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 651 (7th Cir. 2001) (stating that dispute resolved by arbitrators was closed to further litigation by res judicata and collateral estoppel); *cf. Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1280 (5th Cir. 1990) (holding that former employee's lawsuit was not barred by res judicata by union's prior suit where employee was not a party to the prior suit, as a former union member was not in privity with the union, and never authorized the union to represent his interest in prior suit).

In this case, the arbitrator's decision would be final and binding as to the parties to the arbitration, which is all that the CBA contemplates. Exelon's assertion that arbitration of the claims of a few retirees would not result in a final resolution of the dispute as required by the CBA is incorrect. The arbitrator's decision would be final and binding on the parties to the arbitration. The CBA does not

purport to bind non-parties to the arbitration, and for good reason. As a general rule, one is not bound by a judgment in an action in which he is not a party. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). That is not to say, though, that the arbitrator's interpretation of the CBA might not be given weight in a subsequent proceeding, if any, brought by retirees who have not consented to the Union's representation in arbitration. But this alone is not enough to negate the retirees' consent to the Union's representation and arbitration. The potential for weight to be given the arbitrator's interpretation would also exist if the arbitration were to proceed in the absence of the interests of the retirees. The Union's grievance is brought on behalf of both retired *and* active employees and seeks to enforce rights not only of the retirees but also of the active employees' interest in retiree benefits. And the Union's right to arbitrate the *active* employees' grievance over retiree medical benefits has not been challenged. We find no error in the district court's conclusion that the Union may arbitrate on behalf of the seven affected retirees who have consented to the Union's representation.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.

9-2-08