In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3993

ILLINOIS INVESTMENT TRUST NO. 92-7163,

*Appellant*,

*v.*

AMERICAN GRADING CO.,

*Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 3268—**Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 17, 2008—DECIDED APRIL 8, 2009

Before MANION, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Illinois Investment Trust No. 92-7163 ("Illinois Investment") would like to secure the rights to operate a methane gas collection and conversion system at the McCook landfill, in Lyons, Illinois. Thus far, however, its efforts have been thwarted, because the company from which it wants to acquire those rights, Resource Technology Corporation ("RTC") is in bank-

ruptcy, and both the bankruptcy court and the district court ruled that RTC failed to preserve its rights to the system. An earlier agreement between RTC and American Grading Company, the owner of the landfill, had terminated, and thus there were no rights left for RTC's trustee to pass along to Illinois Investment. On appeal, Illinois Investment has explained why it believes that the lease between RTC and American Grading was not terminated and thus why the trustee may still assume the lease and assign it to Illinois Investment. We conclude, however, that the district court correctly assessed the situation, both on the facts and on the law, and we therefore affirm its judgment.

**I**

A brief summary of the sequence of events places the issues in context. As of the mid-1990s, RTC was in the business of collecting methane gas emitted from garbage landfills and converting that gas into usable electric energy. American Grading owned the McCook landfill. On December 27, 1995, RTC and American Grading entered into a lease agreement for the McCook facility, under which RTC was to install and operate a collection and conversion system there, in exchange for royalties to be paid to American Grading. The lease had an initial term of 10 years, and thus was due to expire on December 27, 2005. RTC could extend its term for up to three consecutive periods of five years each by providing written notice of its intent to renew at least 90 days before the expiration of the preceding period.

The royalties under the lease were based on the sale of electrical energy produced by the conversion system. In addition, however, RTC was required to pay American Grading a $100,000 advance royalty payment on January 1, 1996, and each January thereafter for the life of the lease. Finally, the lease contained a termination clause that read in part as follows:

> TERMINATION. If either party or its assigns defaults or persistently fails or neglects to perform any duty or obligations [*sic*] under this Lease, the other party may terminate the Lease by giving written notice of its intention to terminate. If the responsible party fails to correct the default within thirty (30) days after being given notice, the other party may without prejudice to any other remedy, terminate the Lease.

Lease ¶ 16. The termination clause also mentioned "the commencement by the Lessee [RTC] . . . of a voluntary case under the Federal Bankruptcy Laws" as a condition of default.

On November 15, 1999, RTC's creditors filed an involuntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code. Shortly thereafter, on January 18, 2000, the court converted the case to a Chapter 11 proceeding, with RTC's consent. The case proceeded under Chapter 11 for several years. In 2002, the Illinois Environmental Protection Agency ("IEPA") issued an operating permit to RTC for the planned gas collection and control system at McCook. See 415 ILCS 5/9, 5/21. That permit could not be transferred or assigned without IEPA's approval. As far as this record shows, despite the

issuance of the permit, RTC was doing little or no business at the site.

In light of the lack of progress in turning around RTC's fortunes, on September 21, 2005, the bankruptcy court converted its case back into a Chapter 7 proceeding and appointed a trustee, Jay A. Steinberg, for the estate. On March 16, 2006, the trustee entered into a settlement agreement with some of RTC's creditors, including a group called the Greenblatt Entities, under which the Greenblatt Entities were given the right to designate executory contracts held by RTC that the trustee would be required to assume and then assign to them. (At a later time, the Greenblatt Entities, with the court's permission, assigned their rights under the settlement agreement to Illinois Investment; for the sake of simplicity, we will refer only to Illinois Investment from this point onward.) If the trustee refused to seek the bankruptcy court's approval to assume and assign a contract designated by Illinois Investment, then Illinois Investment had the right to ask the court to compel the trustee to act.

In the meantime, there were some pertinent developments at the McCook site. In December 2005, the trustee sought to obtain access to the site, but he was unsuccessful, because the locks had been changed. On January 1, 2006, RTC's annual advance royalty payment of $100,000 became due, but the trustee did not pay it. A few days later, on January 5, the trustee received the keys to the landfill site. By that time, he had obtained several extensions of the lease from American Grading, but the final extension expired on January 5. Having received no

further requests for an extension, American Grading sent the trustee an email on January 19 requesting him to return the keys to the McCook landfill and to refrain from entering the premises. Although the trustee never returned the keys, he also never entered the site after that date. Approximately six weeks later, he entered into the settlement agreement described above. At that point, the trustee abandoned RTC's state operating permit, laid off all the employees and ceased all operations that had related to the McCook landfill.

Illinois Investment, however, was not ready to give up on McCook. On July 7, 2006, at its behest, the trustee filed a motion for entry of an order compelling RTC's estate to assume the lease (among other agreements). American Grading objected on the ground that the lease had expired according to its terms no later than January 5, 2006. The bankruptcy court scheduled a hearing for November 21, 2006, but American Grading failed to appear, because its counsel had withdrawn shortly before the hearing date. At that time, the court ruled that the term of the McCook lease had been extended for a period of five years from December 27, 2005, to December 27, 2010. It stipulated, however, that the estate's right to assume and assign its rights under the lease (and thus the rights of Illinois Investment, as the creditor's assignee) would be subject to further order of the court with respect to "the curing of defaults, if any, and the provision of adequate assurance of future performance . . . ."

After that, American Grading sent two more notices of default with respect to the lease to the trustee, one

on December 29, 2006, and the second on January 12, 2007. It allowed thirty days to elapse after the December 29 notice, and then on January 31, 2007, it issued a notice of termination of the lease and sent that to the trustee. On February 8, 2007, the bankruptcy court entered an order setting a date for a trial on the question whether the lease had been terminated. In a handwritten note at the bottom of that order, someone added the following: "The petitioner shall continue the status quo as of December 28, 2006, without prejudice to ABC's right to raise issues set forth in its notice of 12/29/06." The trial took place on April 4, 5, and 6, 2007. At the conclusion of that trial, the bankruptcy court summarized its finding:

> [I]t is apparent to me that as of January 1 prior to the dispute arising regarding the extension of the agreement—since at that point the time for extension was still outstanding—the lessee, RTC, had an obligation to make a hundred thousand dollar advance royalty payment reduced by whatever amount of royalties had not been earned by American Grading in the preceding year.
>
> That would be information that was in RTC's control and would have enabled RTC to make a somewhat less than $100,000 payment on January 1 of 2006 to the extent it could show that there was an overpayment of royalties for the preceding year.
>
> RTC did not make that payment. And upon demand by American Grading issued on December 29, 2006, failed to make that payment within the subsequent

30 days. That failure gave rise to termination of the contract pursuant to the terms of the lease and the notice that was issued by American Grading.

Now there are a number of other potential grounds for termination that in light of this one I will not have to reach. . . . The question of the advance royalty, as I say, is a very clear one. . . .

The determination of the Court then will be that this contract was validly terminated by American Grading and, therefore, is not capable of being assigned by the estate to [Illinois Investment].

On April 17, the bankruptcy court supplemented this finding with a ruling that American Grading had not prevented RTC from entering the premises of the McCook landfill.

On appeal to the district court, Illinois Investment raised four issues: (1) it was error to characterize RTC's failure to make the $100,000 advance royalty payment as a material breach; (2) the court should have found that American Grading had prevented RTC from entering the landfill and performing under the agreement; (3) the court erred in refusing to allow Illinois Investment to withdraw some exhibits from its exhibit list; and (4) the court misinterpreted its own order of February 8, 2007, setting the matter for trial. Overall, Illinois Investment argued that the bankruptcy court erred when it ruled that American Grading's termination of the lease was effective. The district court rejected each of these points and affirmed the bankruptcy court.

**II**

Before this court, Illinois Investment has abandoned its third argument and rephrased its other arguments as follows: first, nonpayment of the advance royalty did not provide a basis for termination, because it was not a material breach; second, American Grading, by focusing on the estate's nonperformance of the agreement after March 26, 2006 (the date when the trustee abandoned the IEPA operating permit), forfeited any argument based on the nonpayment of royalties in January 2006; third, American Grading prevented RTC from performing under the lease, and thus RTC's nonperformance was excused; and finally, the bankruptcy court erred in its interpretation of the February 8, 2007, order as something permitting American Grading to rely on events occurring after December 28, 2006, to support a finding of termination. We look first at the issues surrounding the advance royalty payment, and then we consider briefly Illinois Investment's arguments about excuse and the scope of the bankruptcy court's February 8 order.

A

We begin with the question whether the court was entitled to consider the nonpayment of royalties at all, given the fact that the estate did not abandon the permit until March 26, 2006, several months after the royalties were due, and American Grading had filed a motion *in limine* arguing that RTC's abandonment of the lease at the latter time was the "sole" basis for termination. Both the bankruptcy and the district courts found that

the nonpayment of the advance royalty was an ongoing violation of the lease, and thus that American Grading was entitled to raise it as a ground for termination even after the statement it made in the motion. We agree with that reasoning. We would have a different question if the trustee had tendered the $100,000 some time between January 5 and March 26, and then American Grading had still insisted that the lease had ended because RTC abandoned its permit. But that tender never happened, and so the debt remained outstanding at all relevant times.

This takes us to the next issue: was the trustee's failure to pay the advance royalty a material breach that justified American Grading's invocation of the termination provisions of the lease? Illinois Investment argues that the nonpayment was no more than a technicality, because no royalties were ever generated during 2006. Neither the bankruptcy nor the district court was persuaded by this effort, nor are we. There is nothing in the lease to suggest that the advance royalty payment is excused if there are *no* royalties. All the lease says is that the amount due would be $100,000 unless RTC could show that a lesser amount (down to nothing) was owed because of an unapplied balance from the prior year's advance royalty payment that could be credited against the current year's obligation. In other words, as American Grading points out, the lease required RTC to replenish the advance royalty payment each January 1 so that at the start of each year American Grading had $100,000 in hand to secure RTC's performance. It would then be able to offset royalties that RTC owed it against

that amount, as the year unfolded. In essence, the advance royalty obligation functioned as a form of security for American Grading. A breach of the requirement to keep that security in place was thus material and entitled American Grading to set in motion the termination provisions of the lease.

B

Even if the breach were material in the abstract, Illinois Investment argues, it should not have led to a finding that the lease was terminated, because its nonperformance was excused. American Grading did not allow RTC (through the trustee) onto the premises of the McCook landfill starting in December 2005, and thus RTC had no opportunity to perform the contract. This is essentially an impossibility argument: American Grading cannot argue breach when its own conduct made RTC's performance impossible.

The facts surrounding the trustee's access to the site are somewhat confused. The bankruptcy court found that American Grading did not entirely prevent the trustee from entering, because American Grading's initial refusal in December 2005 was premised on its belief that the lease had not been renewed. After that issue was settled against American Grading (when it failed to appear at the court's November 21, 2006, hearing), there was no additional evidence indicating that American Grading had prevented the trustee from going onto the landfill. The record showed only that the trustee received keys to the McCook site on January 5,

2006, and that he never responded to American Grading's request of January 19th that he return the keys. Then, on March 16, 2006, he abandoned the operating permit, laid off all employees and terminated the operations related to McCook. The district court thought that the trustee could have gone to the bankruptcy court at some point after American Grading demanded the return of the keys and obtained an order requiring American Grading to permit him to enter. Some of these facts suggest that American Grading was responsible for RTC's lack of access; others suggest that RTC's trustee could have done more.

We need not resolve this point, because RTC's failure to pay *advance* royalties was independent of whatever work RTC may have done later in the year that would have generated current royalties. We thus find that the dispute over access is not material to the resolution of this case.

## C

Last, we come to Illinois Investment's rather odd argument that the bankruptcy court misinterpreted its own order of February 8, 2007. As we noted earlier, that order set a date for trial on the issue of termination, and also, through a handwritten note, required the parties to maintain "the status quo as of December 28, 2006 without prejudice to AGC's right to raise issues set forth in its notice sent 12/29/06." Two possible interpretations of this language have been offered: (1) it preserves the parties' legal rights on the question of termination; or

(2) it prevents American Grading from raising arguments about termination because its notice of termination (but not its notice of default) came after December 28, 2006. The bankruptcy court chose the first of these interpretations; Illinois Investment urges us to find that only the second made any sense.

We cannot accept Illinois Investment's position. First, as the district court also observed, "a court that has issued an order is in the best position to interpret it." Second, the court was about to hold a trial on the question whether the lease had come to an end. It is far more logical to interpret the order as one that preserved the status quo until that trial could be completed than as one that narrowed the issues so dramatically.

### III

We recognize that the practical result of a finding that the lease between American Grading and RTC with respect to the McCook landfill was terminated means that it is not available for any of RTC's creditors. The trustee cannot assume a nonexistent agreement, and thus Illinois Investment (the successor to some creditors) will not be able to obtain the lease by assignment. Illinois Investment's desire to get some value out of the bankruptcy estate, however, cannot trump the ordinary rules of contract. We AFFIRM the judgment of the district court.