In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1019

BANCO PANAMERICANO, INC.,

*Plaintiff-Appellant,*

*v.*

CITY OF PEORIA, ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 13-cv-1064 — **James E. Shadid**, *Chief Judge.*

ARGUED JUNE 1, 2017 — DECIDED JANUARY 11, 2018

Before BAUER, POSNER,[*] and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The central issue in this appeal is whether plaintiff Banco Panamericano has a better claim than

---

[*] Circuit Judge Posner retired on September 2, 2017, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

the City of Peoria to the gas collection system and certain electrical infrastructure at the Peoria landfill. We agree with the district court that Peoria has the better claim under the terms of the lease that governed the installation and operation of the gas collection system and electrical connections.

By way of introduction, in 1995 Peoria signed a lease with Resource Technology Corporation (RTC) that allowed the company to construct and operate a gas conversion project at the city's landfill. The system collected the gasses generated as byproducts by the landfill and helped convert those gasses into electricity. The agreement provided that when the lease terminated, the city had an absolute right to retain, at no cost, the "structures" and "below-grade installations and/or improvements" that RTC installed at the city's landfill.

Several years later, RTC entered bankruptcy proceedings. Banco Panamericano provided the company with postpetition financing secured with liens and security interests in effectively all of RTC's assets. RTC later defaulted on its loan from Banco Panamericano. Litigation ensued, and the city notified RTC that it was terminating the lease and had elected to retain the structures and installations as provided in the lease. After RTC stopped operating the gas conversion project itself, the city modified the system to stay in compliance with environmental regulations for methane and other landfill gasses, and continued to use the property.

Banco Panamericano then filed this suit against the city (and others, but for simplicity's sake, we refer only to the city) for unjust enrichment. The bank alleged that it had a better claim to the property because its loan was secured by a lien on all of RTC's assets and the bankruptcy court had given its loan "superpriority" status. On cross-motions for summary

judgment, the district court ruled in favor of the city. We affirm. No matter the priority of the bank's claim to RTC's assets, the undisputed facts show that the bank has no claim to the city's assets. By the terms of the lease between RTC and the city, the disputed structures and installations are city property. The lease gave RTC no post-termination property interest in the disputed property.

I.  *Factual and Procedural History*

A.  *The Gas Conversion Project*

The City of Peoria entered a lease agreement with RTC on November 30, 1995. The lease permitted RTC as lessee to install and manage a gas-to-energy conversion project at lessor Peoria's landfill. The gas collection system is a network of underground wells and pipes that collect and transport the landfill's gas byproducts to a central point. A plant then converted the gas into electricity, which RTC sold to the local electric utility. The transmission of electricity between the gas conversion project and the electric utility used three miles of utility poles, cables, and associated infrastructure built by RTC (the "interconnect"). The property in dispute here is the gas collection system and the interconnect. The plant that converted gas to electricity is not part of this case.

The lease granted RTC the exclusive right to develop the gas conversion project. The construction, operation, and maintenance of the project were to be at RTC's sole expense. In exchange, RTC agreed to pay the city a royalty of six percent on its energy sales. The lease also allowed the city to retain all "structures" and "below-grade installations and/or improvements" at "no cost" after the lease terminated. The

initial term was for ten years, with various options to extend. The lease also provided grounds for early termination.

B. *RTC's Bankruptcy and Banco Panamericano's Financing*

On November 15, 1999, RTC entered involuntary bankruptcy proceedings under Chapter 7 of the Bankruptcy Code. On January 18, 2000, RTC consented to convert its case to a Chapter 11 petition. After the conversion, RTC continued to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. At that stage, Banco Americano provided postpetition financing to RTC.

In March 2000, the bankruptcy court issued an order authorizing Leon Greenblatt to provide postpetition financing to RTC on behalf of himself, Banco Panamericano, and Chiplease, Inc. (It appears that Leon Greenblatt is or was Banco Panamericano's sole officer, director, and employee. See *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 749 (7th Cir. 2012).) The order secured Banco Panamericano's financing by liens and security interests in essentially all of RTC's assets. The order granted the bank a "superpriority" claim pursuant to 11 U.S.C. § 364(c)(1), which conferred a "priority in right of payment over any and all other unsecured obligations, liabilities and indebtedness of the Debtor" and over all administrative expenses and certain priority claims.

On August 13, 2004, Banco Panamericano declared that RTC had defaulted on the postpetition loan. The bankruptcy court lifted the automatic stay on October 15, 2004, allowing Banco Panamericano to pursue available collateral. RTC continued to operate the gas collection project during this time, and in 2006 the bankruptcy court permitted an extension of

its lease with Peoria. In 2008 RTC's bankruptcy trustee sought permission from the bankruptcy court to assume and assign RTC's executory contracts pursuant to 11 U.S.C. § 365(a) and (f)(2)(B), including the gas conversion project at the Peoria landfill. After a two-day trial, the bankruptcy court denied the trustee's motion to assume and assign, and we affirmed on appeal. See *In re Resource Technology Corp.*, 624 F.3d 376 (7th Cir. 2010).[1]

The amount of methane gas collected at the landfill dwindled in 2008, and by February 2009 the gas conversion operation had ceased entirely. On February 22, 2008, Peoria sent RTC a formal termination letter citing RTC's failure to cure certain breaches of the 1995 lease. The letter also said that Peoria elected to retain all of the "structures" and "below-grade installations and/or improvements" as outlined in paragraph 5(b) of the lease. The city asked RTC to remove any other equipment that it wished to retain as soon as possible. Because RTC was no longer collecting and converting the landfill's gas byproduct, the city pursued alternative means to stay in compliance with various state and federal environmental regulations. The city bought and installed a blower to withdraw gasses from the landfill and then used a candlestick flare to burn the gasses.

---

[1] The RTC bankruptcy has generated quite a bit of litigation. See, e.g., *Illinois Investment Trust No. 92-7163 v. American Grading Co.*, 562 F.3d 824 (7th Cir. 2009); *In re Resource Technology Corp.*, 528 F.3d 467 (7th Cir. 2008); *In re Resource Technology Corp.*, 430 F.3d 884 (7th Cir. 2005); *In re Resource Technology Corp.*, 254 B.R. 215 (Bankr. N.D. Ill. 2000); *County of Peoria v. Scattered Corp.*, No. 06 CH 88 (Ill. Cir. Ct. Feb. 10, 2006). In this appeal, the parties have presented the issues in isolation from other cases, and that is how we address them.

C. *Procedural History*

In February 2013 Banco Panamericano filed this suit against Peoria for unjust enrichment. The bank claimed that Peoria unjustly enriched itself by benefiting from the structures and installations that it retained after termination of the RTC lease. The bank claimed that its superpriority lien on RTC's assets gave it a better claim than the city to the gas collection system and interconnect. The parties filed cross-motions for summary judgment on a variety of issues. The district court granted the city's motion on the ground that the language of the lease barred the bank's unjust enrichment claim no matter when precisely the lease had been terminated. The court denied the bank's motion to reconsider, emphasizing that the bank "could not have obtained any rights greater than those held by RTC even with a superpriority interest."

II. *Analysis*

A. *Legal Standards*

Banco Panamericano seeks relief for alleged unjust enrichment under Illinois law, and we have jurisdiction under 28 U.S.C. §§ 1332(a) and 1291. We review *de novo* a district court's ruling on a motion for summary judgment. *Calumet River Fleeting, Inc. v. International Union of Operating Engineers, Local 150, AFL–CIO*, 824 F.3d 645, 647 (7th Cir. 2016), citing *Exelon Generation Co. v. Local 15, International B'hood of Electrical Workers, AFL–CIO*, 540 F.3d 640, 643 (7th Cir. 2008). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). That standard has been satisfied here.

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (citations omitted). In situations like this case, where a plaintiff seeks a benefit that was transferred to a defendant by a third party, a defendant's retention of the benefit is unjust when "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *Id.* (citations omitted). Banco Panamericano pursues only the third route, arguing that it has a "better claim" to the gas collection system than Peoria has.

B. *The City's Rights Under the Lease*

The district court correctly found that undisputed facts show that Peoria has the "better claim" to the disputed property. The court analyzed separately two routes the lease provided for Peoria to retain the property—the 30-day notice provision and the 90-day abandonment provision. The court then decided that the property had transferred to Peoria under the abandonment provision. We agree with that reasoning, but we also believe that reading paragraph 5(b) of the lease as a whole offers an even simpler solution. The lease gave RTC no post-termination interest in the disputed property at all, only obligations. See *Dix Mutual Insurance Co. v. LaFramboise*, 597 N.E.2d 622, 625 (Ill. 1992) ("The lease between the landlord and the tenant must be interpreted as a whole so as to give

effect to the intent of the parties."), citing *Stein v. Yarnall-Todd Chevrolet, Inc.*, 241 N.E.2d 439 (Ill. 1968). This makes eminent sense from a practical standpoint, since the property in question—pipes, pumps, electrical lines, etc.—was being installed on public property, the city landfill, and removal would pose obvious practical problems, at least without the city's consent.

The relevant portion of paragraph 5(b) of the lease reads:

> (b) Within Thirty (30) days after termination of this Lease for any reason, Peoria shall notify RTC of any equipment, structures, and below grade installations and/or improvements that Peoria wishes to retain. Any structures and below-grade installations and/or improvements that Peoria elects to retain shall become Peoria's property at no cost to Peoria. Peoria will purchase any equipment that it elects to retain, and RTC elects to sell to Peoria, at a price mutually agreed upon by Peoria and RTC. Any equipment, structures, and below-grade installations and/or improvements not retained by Peoria shall be removed by RTC at its sole expense. RTC shall restore the premises at its sole expense and to Peoria's satisfaction, and each area in and around a well shall be restored to its condition at the time the well was installed … . Plans for removal must be approved by Peoria before removal is begun. … Title to and owner-

> ship of any of RTC's property which is not re-
> moved within ninety (90) days after termination
> passes to Peoria.[2]

This paragraph of the lease addresses three types of prop-
erty: (1) the "equipment," (2) the "structures," and (3) the "be-
low-grade installations and/or improvements." The disputed
property falls into categories (2) and (3)—the structures and
installations. The gas collection system is a network of under-
ground wells that constitute a below-grade installation. The
interconnect, which is three miles of utility poles and cables
connecting the gas collection project to the electric utility, is a
structure.

The lease gave RTC some post-termination rights in the
"equipment," but not in the structures and installations. After
the lease terminated, RTC retained a property interest in the
equipment at the gas collection project, which is why Peoria
could keep that property only if RTC "elects to sell" it and the
parties could find a "price mutually agreed upon." The bank
made clear at oral argument that it seeks compensation for
only the structures and installations, not the "equipment,"
and the lease treated structures and installations differently.
The lease gave RTC no post-termination rights in those items,
but only duties, such as the duty to "restore the premises"
around the wells "at its sole expense and to Peoria's satisfac-
tion."

Most important, as we see things, the lease gave Peoria the
right to retain the structures and installations at no cost no
matter how the lease terminated. As the district court noted,

---

[2] For ease of reading, we have replaced references to "Lessor" with "Peo-
ria" and "Lessee" with "RTC."

the lease first provided that Peoria could retain the structures and installations if it notified RTC within 30 days of termination. Even if Peoria neglected to notify RTC within 30 days of termination, however, that property automatically passed to Peoria 90 days after termination of the lease. One way or the other, Peoria had the right to retain the property after termination, which happened years before this suit was filed. (We need not decide exactly when.) That contract language is plain and gives the "best indication of the parties' intent." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) (citations omitted). The lease allowed for no situation in which RTC could have kept the structures and installations without Peoria's consent.

In sum, Banco Panamericano does not have a "better claim" than Peoria to the disputed property because the bank could not have greater rights to the property than originally held by RTC. The lease between RTC and Peoria gave RTC no post-termination property interest in the installations or structures at the Peoria landfill. The bank's security interest could not reach the structures and installations at Peoria's landfill, so the district court's judgment in favor of Peoria is

AFFIRMED.